Superiority under Rule 23b is a comparative concept. The district court is supposed to compare a class action with other litigation procedures for resolving the controversy. In this case, the district court made no comparisons. The district court did not identify any other viable method for resolving the claims of all the putative class members. The next point I'd like to make is that in Shady Grove, which was cited to the court in the 20HA letter, the Supreme Court reaffirmed what it had earlier decided in the Califano case, that only Congress can create a categorical exemption from the availability of a class action procedure. Clearly, Congress did not create any kind of exemption to class action relief for violations of FACTA. Congress did not pass any bar on class actions to vindicate the rights under FACTA. Congress did not impose any cap on statutory damages that could be recovered in the aggregate in a class action based on violation of FACTA. And what's most compelling is that Congress recently amended the statute in response to allegations that there had been abusive class action lawsuits based on the printing of expiration dates. In response to this outcry by merchants that these lawsuits were unfair, they clarified the statute. But the clarification was very limited. They only exonerated companies that allegedly mistakenly violated FACTA by printing expiration dates. So even despite this supposed abuse of the class action device, even then they did not pose any limits on class actions going forward, even for expiration date cases, and certainly not for cases like this one, which are based on printing too many digits of a credit card number. Is the consideration of the magnitude of the damages to be considered at any point? Not at this point, Your Honor. Well, when is it to be considered, and if it's not considered at this point? It is not appropriate to consider it at the class certification stage because the aggregate amount of damages are irrelevant to the procedural fairness of a class action. That's not answering my question. I understand that theory. But when can they be considered? They can be considered only if, after a class is certified, and only if, after the plaintiff prevails on the merits, and only if an actual damage word is actually awarded in favor of the plaintiff and against the defendant, then you know. Until that point happens, we are talking pure speculation. It is all hypothetical as to what might happen in the future. We presented to the district court, when we renewed our motion for class certification, evidence of class action settlements in other FACTA cases, in cases of dismissals, to prove empirically that you just, although I think it's pretty self-evident, that you just can't know what's going to happen in the future. So there's no need to address constitutional issues at the class certification stage because those issues do not arise, if at all, until a damage award is actually imposed against the defendant. And then, if necessary, a court can address constitutional issues about the size of the damage award. But that cannot be the basis for denying class certification in the first place. The problem here, it's obvious from reading the district court judges' ruling here and reading a number of other district court opinions around our circuit and other circuits as well. It's a powerful, if the class is certified here, and apparently this was going to be a nationwide class, or was it these theaters just located here in Southern California? No, it was a nationwide class. Right. So, you know, it's a powerful hammer to force the other side to settle. Your Honor, every class action is a powerful hammer. There's nothing that makes this class action any different. Mere fact that a class action, when it is certified, puts additional pressure on the defendant cannot be a basis for refusing to certify a class because then you would never have a class action. And in these consumer statutes, you know, the courts are all reflecting concern is that there's no real showing of injury. Yes. That is what the district court felt in this case. But the problem with her analysis is that she confused harm with monetary damages. And there's a difference. Harm is not limited to pecuniary loss. This court reaffirmed that principle most recently in the Cooper case that we cited in the 28J letter, where the court said actual damages under the SCRA need not be pecuniary. The harm... Your Honor, there is kind of an inconsistency between actual damages and statutory damages. Statutory damages, I think, assume you don't have to have harm. Your Honor, I think you have to have harm. I don't think you have to have monetary damages. What Congress did is it recognized that in these kind of cases where the harm that you are talking about is an increase in risk, and this court has concluded in the Covington case that increase in risk is cognizable harm. So Congress understood that this kind of risk is not always... this kind of harm is not always quantifiable. Like the court said in the Murray case in the Seventh Circuit, it is small and hard to quantify. So Congress said you don't have to prove actual monetary damages. You can seek statutory damages. Congress has created a remedy that they believe is appropriate for this kind of harm. It's not an absence of harm. It may be an absence of monetary loss, but that is not the same as an absence of harm, and that is a legal error that the district court made, which is one of the reasons why she abused her discretion. The only other point that I would like to make right now is that in terms of public policy, the rule cannot be that a defendant can avoid a class action and benefit by violating the law on a widespread basis. It would just be perverse to make a class action less available just because the defendant violates the law more often. You cannot reward a defendant for violating the law more as opposed to less. And it serves a superiority requirement on its head to say that a class action is not appropriate just because the defendant violated the rights of too many people. That has it backwards. The question in this case was what was the best procedure for vindicating the rights of approximately 290,000 people who all had the same claim and there was only one issue? Because there was no dispute as to what AMC did. There's no dispute that they printed on a widespread basis expiration for too many digits on credit card receipts. So the only question was what is the best procedural mechanism for resolving this case? And it offends public policy and is contrary to the precedence of the Supreme Court and this court to say that a class action is not superior just because under the remedy devised by Congress, AMC did not violate the law. The question is what is the best procedural mechanism for resolving this case? And it offends public policy and is contrary to the precedence of the Supreme Court and this court to say that a class action is not superior just because under the remedy devised by Congress, AMC did not violate the law. The question is what is the best procedural mechanism for resolving this case? And it offends public policy and is contrary to the precedence of the Supreme Court and this court to say that a class action is not superior just because under the remedy devised by Congress, AMC did not violate the law. The question is what is the best procedural mechanism for resolving this case? And it offends public policy and is contrary to the precedence of the Supreme Court and this court to say that a class action is not superior just because under the remedy devised by Congress, AMC did not violate the law. Now, there is a distinction between class actions under Rule 23b-1 and b-2 and class actions under Rule 23b-3. Now, under b-1 and b-2, they're traditional class actions. I personally think of them as presumptive class actions. It's where you satisfy the requirements of 23a and then you also satisfy whatever the particular case happens to be under those statutes. Now, as this court recognized in the Duke's case, under Rule 23b-3, that was added to the rule later in 1966, and as this court observed, they're more, I believe the word was adventuresome class actions. The advisory committee that added Rule 23b-3 to the federal rule recognized that creating class actions that offered widespread monetary relief essentially created, carried a lot of risks with it, and as a result, it added additional requirements, one of which was that it be superior. And the superiority requirement is best thought of as sort of a catch-all for the district court, where even if the other requirements of class action are satisfied, as Your Honor has observed, and it looks like a class action, there's something about it that makes a class treatment unfavorable. Unfair in your view?  I don't think it's unfair. In fact, the advisory committee says that, you know, Rule 23b class actions may be proper unless it will bring about procedural unfairness or other undesirable consequences. Well, in our view, aggregating is fair. The mere fact that you're looking at $29 million makes it unfair? Yes, Your Honor. In this case, because as the district court observed and as the other courts to address this issue have observed, here there was no actual harm. And in addition, unlike some other class actions where you may be entitled to or where you may need to aggregate the claims in order to be entitled to attorney's fees, here FACTA provides an attorney's fees provision. So any individual who wants to vindicate his or her rights under FACTA can institute an action and recover at least $100 and up to $1,000 in statutory damages plus all of their attorney's fees and costs. And that actually raises an interesting issue because throughout this case, appellant has presumed that setting aside the issue of disproportionate damages, that class treatment is the best way for all of these plaintiffs to obtain these statutory damages. But at the same time, an important part of appellant's argument, and as the court just heard appellant argue here, disproportionate damages are premature as in after trial, the aggregate statutory award could always be reduced even to below the statutory minimum. Now, we think it's significant that the imputative class counsel in this case is urging this court to certify a class despite the fact, and in fact because ultimately the class members may receive less than even the minimum that they would be entitled to receive if they proceeded individually. And as a practical matter, if we look at the settlements that have been reached in this case, one was just discussed by appellant's counsel, we see that they involve far less than the $100 statutory minimum. For instance, in the Suolian settlement, Suolian was the case that was previously pending before this court when it settled. The class settlement in that case provided each class member with a voucher for one free coffee drink, whereas class counsel, who happened to be the same counsel as counsel for appellant, received attorney's fees in the six figures. Now, this court has held, and separate apart from the issue of excessive damages, which we discussed, which are discussed in client and which we briefed extensively in our papers, separate and apart from that issue, this court has held that class treatment is not superior, where as here, the primary beneficiaries of class treatment would be the class, I'm sorry, class counsel and not the class members themselves. And if I may read just one sentence from this court's 1974 opinion in the case of In Re Hotel telephone charges, which was cited by the court and relied upon this court in Klein, quote, whenever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute. We would submit that in this case under these circumstances, it was certainly within the district court's discretion to conclude that class treatment was not procedurally superior to individual actions. And that's especially true where, as here, the statute provides. There's nothing in FACTA where Congress has said that they didn't want class action treatment for these cases. Is there? Your Honor, both FACTA and the FACTA reform bill are silent on the issue of class actions. Isn't the general presumption that class actions apply to all? Well, I believe. All actions unless, you know, unless Congress sort of explicitly exempts them or. Your Honor, I believe the rule is that absent clear congressional direction either way, class actions are proper provided that the parties can satisfy the requirements of Rule 23. Right. In this case, the plaintiff tried and the district court determined that. Well, is it your position or did the district court, I don't recall at the moment, but that this case can't satisfy the requirements of Rule A, 23A? Neither opinion by the district court addressed that issue. We do actually, in fact, we did raise at the district court level an argument regarding appellant's adequacy as a class representative, which we believe we've preserved for the purposes of an appeal. And while I'm discussing. Do you think there's a serious contention about that? I think there's an issue that's serious enough, Your Honor, that would require remand to the district court for consideration should this court decide to reverse on this issue. Obviously, the order that we seek here is an order affirming the district court's issue. But while we're discussing. Now, when you're talking about $29 million in damage, Justice, as Judge Walter just mentioned, that's really, you're just speculating, correct? Well, no, Your Honor. There are 290,000 punitive class members and. Well, the range of damages is 100 to 1,000, right? That's right. So the minimum statutory award would be $29 million and the maximum would be $290 million. So the only speculation is where in that range it would fall. How do we know the size of the class? In discovery, Your Honor, pre-certification discovery, we were able to determine the number of receipts that were issued from the small number of malfunctioning machines that are at the root of this case. Do you think the district court could have certified a smaller class? I don't see how, Your Honor. Why not? Because all of the. All class members that reside within the district, that reside within the central district. At least the question whether the district court could have. Certified a smaller class. A smaller class of only those within the central district. The consideration was never raised by other parties. It's possible, isn't it? Well, I think we would. It would be possible for the district court to consider that, I believe. First of all, the appellant never asked for it at the district court level. No, but the district court has a lot of authority under Rule 20 on how to manage these cases, correct? That's true, Your Honor. But even if the court were to consider that issue, I think that the proportionality issue would still apply in this case. Because even if, at this point we're talking about hypotheticals, but even if, let's say, there were 50,000 people in the central district of California, you would still be looking at 50,000 times a minimum of $100 compared to zero actual harm. You said, of course, what you wanted was an affirmance. But failing that, what was your fallback position? I was going to say, Your Honor, that if the court doesn't affirm, then we would respectfully request in the alternative an order remanding the case to the district court for consideration of the alternative grounds that we raised in our district court briefs, which the district court never raised because it found entirely on the issue of superiority. Now, there's nothing in the advisory notes to Rule 23 about consideration of the amount of damages, is there? That is true, Your Honor. At least when I read it, I didn't see anything. No, that's right, Your Honor. There's nothing in the rule. It is interesting to note, however, that this legal principle of disproportionate damages, the origin of it is the Ratner case from 1972. And that was decided by Judge Frankel of the Southern District of New York. Judge Frankel has been recognized as one of the architects of the rule. He sat on the advisory committee that added the 1966 amendments, which included Rule 23b-3. Judge Frankel's writings on Rule 23 are considered authoritative as regards Rule 23. And the Ratner decision was authored just six years after the amendment that added Rule 23b. And so Judge Frankel understood the superiority requirement as well as anyone, and the issue was fresh on his mind, and he was the judge that announced this principle, which has since become the majority principle in circuit courts around the country. Appellant claims in his papers that he attempts to paint this principle as somehow the minority position. It's simply not true. Not only was it recognized and, in fact, extended by this court in Klein, it was also adopted by the Sixth Circuit in the Watkin case, by the Tenth Circuit in the Wilcox case, by the Eleventh Circuit in the Schroeder case. And it was also the principle, although not Ratner, was favorably referred to, though not applied, by the Second Circuit in the Parker case. In addition to this, again, the district court in this case was hardly out on the limb. It was one of eventually over 20 different district courts to decide this issue in this same way. There was one other district judge who went the other way. Judge Sillman. Judge Sillman, that's correct. All of the other judges interpreted this the same way. Now, in contrast to that weight of authority, there's... Well, I mean, there's... No, I'm sorry. You know, I was a... No disrespect to Judge Walter, he's a district judge, and I was a district judge, but, you know, whatever I said as a district court judge didn't count as, you know, for anything. Your Honor... It was nothing. I mean, it was just my view about what the world had, you know, how I was feeling that day. I mean, it's nothing. And, no, I would never, ever demean the weight of any district judge. No, I'm not saying you are. I'm just saying you can't... Just the fact that 10 district judges said X doesn't necessarily mean that they're all right. Well, Your Honor, when I was talking about the weight of authority, I was referring more to the circuit court opinions, because the only other circuit court that has gone the other way is the Murray case, which is referred to repeatedly and relied on almost exclusively by appellants, because it's the only case out there that goes the other way. Let me ask you this. What do you say about counsel's argument up here that, you know, if it's just a tiny violation, you get to go as a class action, but if it's a major violation, forget it. You can't do a class action, because the harm is so big. So if it's just a little violator, class action, treatment, big violator, big-time violator, uh-uh. Well... Is that really what Congress wanted? Your Honor, when you say little, I'm reading into your question. You mean a small number? Yes. Okay. Well, in this case, there were a large number of violations, but it was a little violation. It was a, even though, regardless of whether it is ultimately adjudicated to be willful or not. But Congress decided that, yeah, it is a violation, and it's a hundred-to-a-thousand-dollar violation, didn't they? That's absolutely right, Your Honor. And if Mr. Bateman were to proceed individually, he would be entitled, you know, without having suffered any actual damages, he would be entitled to receive a minimum of $100 statutory damages. But Rule 23, I'm sorry, the fact is it does not give Mr. Bateman the automatic rights to proceed on behalf of 290,000 other people. To do that, he has to satisfy the requirements of Rule 23. But when we're talking about superiority, we don't want our courts clogged with a thousand suits when one class action would handle the issue. That is correct, Your Honor. And that's also the problem of getting a lawyer to take a little dinky case. Your Honor, it may not be. It may be that a thousand suits aren't filed in this case. Frankly, it would be surprising, because this case has been pending for more than three years, and no one has sought to join in the suit. The problem is a practical one, that the — What do you think about the class being remanded to consider whether the class should be smaller? Well, again, Your Honor, I think that if that were to occur, the issue — we would still have the disproportionate damages issue. I don't know, as I stand here, the exact number of violations in this case. Well, wouldn't it be 29 million that just cost it all to be rethought? Well, Your Honor, that would depend on the number of violations. But I think that the district court would certainly have discretion to reconsider the issue. But I think that we would probably be making the same arguments, that it's disproportionate depending on the number of violations in question. Okay. Thank you. Thank you, Your Honor. We have time for rebuttal. Thank you. Your Honors, we're not disputing the existence of a superiority requirement or trying to evade the superiority requirement. The question is, how do you decide whether superiority is satisfied? And it's not a catch-all. The superiority requirement has a purpose, and the purpose is to promote litigation efficiency and a fair procedure. And it's ironic that the defendant cites the Dukes v. Walmart case, because in that case, the court majority said it would be perverse to deny classification just because of the large scope of the defendant's violations. And yet, that's really what they're arguing here. Now, with respect to their argument about attorney's fees, their position is contrary to what this court held in the local joint executive board case that we cited in our testimony to the district court when we moved for classification and which the district court ignored. And in that case, the court held the superiority requirement was satisfied where the claims at issue were approximately $1,300 each per class member. And that was an action brought under the Warren Act, a statute that allowed for recovery of attorney's fees. So the mere existence of attorney's fees being recoverable on a statute does not answer the question as to whether the amount is enough at stake to motivate attorneys to take on the case. Now... Well, despite my little comment about district judges and what they have to say as a district judge doesn't count as much, nonetheless, there were here a number of district judges that were terribly troubled by this. Yes, there were. And they said so. Yes, they did. And we think they were wrong. And... So it doesn't count for anything? Well, they're not precedent. And the question is, this is why we're on appeal. We have a legal question as to how do you decide the superior or the question. And the analysis by all the judges who relied on this disproportional argument that the defendant has made, we believe are legally erroneous. Because especially when you're trying to factor or consider disproportionality on the basis of aggregate damages, the aggregate doesn't answer the disproportionality question. Now, defendant has suggested that we're actually urging that the class members take less and that somehow we're going to be the beneficiaries of this lawsuit. And that is not true at all, Your Honor. I responded to Justice Fletcher's question about when do you decide that issue. And the question is, you know, not how that issue is going to be resolved, but when in the procedural system do you decide it. If we get to a trial that we win and then we get to an issue of the judge deciding the constitutionality of the damages, whether an actual damage award is excessive, we will certainly argue that it's not excessive and that Congress was reasonable in imposing this small amount of damages. We started the Mourning case from the Supreme Court where the Supreme Court ruled that the same range of damages under TILA was a modest amount. So we're not urging or suggesting that class members should get less. We're just saying that that issue is not ripe for decision now. That may be a constitutional issue to be decided some other day. But the constitutional issue does not need to be decided now and it is not relevant to whether or not a class action meets the requirement of superiority. Now, the district court here didn't address the Rule A factors, right? Correct. The district court did not address the – Even if we agree with you, we'd have to send it back down for the district court to address. Well, we would submit, Your Honor, that based on the papers, as a matter of law, there's only one conclusion that can be reached. It was not a serious challenge before the district court to the adequacy issue. They did not even address the adequacy issue in their appellate briefs. Well, there was no need to. The district court didn't say anything. I understand, although they did make a predominance argument in their appellate briefs. But nevertheless, it was a very thin argument, to say the least. And I think the argument was that because I happened to be a personal acquaintance of Mr. him from being a class representative. I doubt there's many people that hire lawyers that they don't know, some way or another. So as a matter of law, a mere acquaintance is not enough to render a class representative inadequate. So we submit that as a matter of law, the only possible result consistent with the law in this case would be to direct the district court to grant class certification. And then finally, although we've discussed this in our papers, as this court knows, the problem with class certification in Klein was that you had a defendant class, where the problem with the fairness of the class certification in that case is that you would impose one defendant, you would impose liability on one defendant for the conduct of another defendant. So even though they cited Ratner, this court did not endorse the analysis of Ratner as the way to decide the superiority question, this case does not remotely present the kind of problem that the court faced in Klein, where you were multiplying defense liability. Here we have one defendant with 290,000 potential class members who all have the same issue. The superiority question is supposed to be, what is the best procedure for resolving those claims? And there's really only one way to do it. Finally, to address the court's question about whether the district court has the authority to certify a smaller class, that seems to be consistent with the approach that, in the concurring opinion in the Parker v. Time Warner case. But the problem with that is that you cannot have a district court setting these cutoffs as to what amount of damages is enough or too much, because then you're creating a categorical limitation. Congress did not create, did not impose a limit to class actions under FACTA. It did under TILA, the statute under which Ratner first was decided. And in response to that, Congress said, okay, wait a minute, class actions under TILA for technical violations. And we're not talking about technical violations here. We're talking about willful violations of the statute. We have to prove willfulness. But for the technical violations, Congress created a limit on aggregate damages. They imposed no such limit for FACTA cases. So for a district court to say, well, I'm only going to certify a case if the damages are up to X, you're having by judicial fiat a substantive limit that Congress has not imposed on the availability of the class action device. I just raised that as a question. That's all. All right. Well, unless the court has any more. I don't tell district court judges what to do. Unless the court has any more. Plus part of our mandate. Okay. Unless the court has further questions. Thank you, Your Honor. Thank you. It's a very interesting case. The matter will be submitted. We have one last one for argument today.
judges: Walter, Fletcher B. , Paez